### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

| | |
|---|---|
| JANESLY LAFORTUNE,<br><br>   Plaintiff,<br><br>v.<br><br>LANIER HOME RESTORATION GROUP, CORP. and LESLIE CORELY,<br><br>   Defendants. | CIVIL ACTION FILE NO:<br><br>**JURY TRIAL DEMANDED** |

### AMENDED COMPLAINT

Plaintiff, JANESLY LAFORTUNE, pursuant to Fed. R. Civ. P. 15(a)(1)(B), files this Amended Complaint for damages and other relief against Defendants LANIER HOME RESTORATION GROUP, CORP. and LESLIE CORELY, and alleges as follows:

### NATURE OF THE ACTION

1.  This is an action for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA"), as well as claims under Georgia law for defamation, false arrest, false imprisonment, malicious prosecution, invasion of privacy/false light, and intentional/negligent infliction of emotional distress.

EXHIBIT 1

## PARTIES

2. Plaintiff Janesly LaFortune ("Mr. LaFortune" or "Plaintiff") is a citizen of Georgia.

3. Defendant Lanier Home Restoration Group, Corp. ("Lanier Home") is a Georgia company licensed to conduct business in the state of Georgia.

4. Lanier Home's principal place of business is located at 40 Hightower Parkway, Dawsonville, Georgia 30534.

5. Lanier Home may be served with process by delivering a copy of the Summons and this Complaint to its registered agent, Leslie Corely, at 40 Hightower Parkway, Dawsonville, Georgia 30534.

6. Lanier Home is subject to personal jurisdiction in this Court.

7. Defendant Leslie Corely ("Ms. Corely," and collectively with Lanier Home, "Defendants") is a natural person and may be served with service of process wherever she may be found.

8. Ms. Corely is subject to personal jurisdiction of this Court.

## JURISDICTION AND VENUE

9. The Court has original jurisdiction over Mr. LaFortune's FLSA claim pursuant to 28 U.S.C. § 1331 because it raises a question of federal law.

10. The Court has jurisdiction over Mr. LaFortune's state law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

11. Mr. LaFortune's state law claims arise out of a common nucleus of operative fact with his federal claims for unpaid overtime wages under the FLSA, because both claims arise out of Defendants' employment practices pertaining to Mr. LaFortune.

12. Under 28 U.S.C. § 1391 and Local Rule 3.1(B)(3), venue is proper because a substantial part of the events or omissions giving rise to Mr. LaFortune's claims occurred in Dawson County, Georgia, which is located within the Gainesville Division of the Northern District of Georgia.

### FACTUAL ALLEGATIONS SHOWING THAT LANIER HOME EMPLOYED MR. LAFORTUNE

13. Lanier Home is a Georgia company based in Dawson, Georgia, which, among other services, provides water, fire, and storm damage restoration services, as well as roofing instillation and repair, and home renovation.

14. Lanier Home has been providing its services since 2021.

15. Lanier Home provides its services throughout the North Georgia area.

16. Lanier Home qualifies as an "employer" within the meaning of the FLSA.

17. Lanier Home is a covered enterprise under the FLSA.

18. Lanier Home's gross sales or business done exceeds $500,000.00 annually.

19. Lanier Home is an enterprise engaged in commerce or the production of goods for commerce within the meaning of the FLSA.

20. Lanier Home employs two or more individuals who engage in commerce or regularly handle or otherwise work on goods or materials that have been moved in or produced for commerce.

21. While performing their job duties, Lanier Home employees regularly handle materials that were manufactured outside of the state of Georgia.

22. While performing their job duties, Lanier Home employees regularly use phones and/or computers manufactured outside the state of Georgia.

23. Lanier Home employed Mr. LaFortune as that term is defined by the FLSA.

24. Mr. LaFortune worked for Lanier Home as a project manager.

25. As a project manager, Mr. LaFortune regularly worked with Lanier Home's subcontractors and vendors on client projects.

26. Lanier Home hired Mr. LaFortune.

27. Lanier Home maintained Mr. LaFortune's employment records.

28. Lanier Home set Mr. LaFortune's work schedule.

29. Lanier Home regularly evaluated Mr. LaFortune's performance.

30. Lanier Home paid Mr. LaFortune's wages.

31. Lanier Home directed Mr. LaFortune's work.

### FACTUAL ALLEGATIONS SHOWING MS. CORELY EMPLOYED MR. LAFORTUNE

32. Ms. Corely employed Mr. LaFortune within the meaning of the FLSA.

33. Ms. Corely is the sole owner of Lanier Home.

34. Ms. Corely is the Chief Executive Officer, Chief Financial Officer, and Secretary of Lanier Home.

35. Ms. Corely hired Mr. LaFortune.

36. Ms. Corely directed Mr. LaFortune's work.

37. Ms. Corely exerts operational control over Lanier Home.

38. Ms. Corely set the pay policies relevant to Mr. LaFortune.

39. Ms. Corely enforced Lanier Home's pay policies.

40. Ms. Corely had the ability to discipline Mr. LaFortune.

41. Ms. Corely had the ability to terminate Mr. LaFortune.

42. Ms. Corely did in fact terminated Mr. LaFortune.

43. Ms. Corely directed Mr. LaFortune's work.

44. At all times relevant to this Complaint, Ms. Corely had the ability to hire individuals to work for Lanier Home.

45. While employed by Defendants, Mr. LaFortune was an individually covered employee under the FLSA.

46. By way of example, pursuant to his job duties, Mr. LaFortune regularly used phone, computers and other items manufactured outside of the state of Georgia, assisted with projects using construction materials manufactured outside Georgia, and communicated with insurance companies outside of Georgia.

**FACTUAL ALLEGATIONS SHOWING DEFENDANTS JOINTLY EMPLOYED MR. LAFOTRUNE**

47. Ms. Corely and Lanier Home jointly employed Mr. LaFortune within the meaning of the FLSA.

48. Mr. LaFortune began working for Defendants on or about January 3, 2022.

49. Mr. LaFortune continued to work for Defendants until on or about April 24, 2022.

50. Defendants compensated Mr. LaFortune a weekly sum of $903.85 during the duration of his tenure with Defendants.

51. Defendants set Mr. LaFortune's pay rate.

52. Defendants paid Mr. LaFortune only his weekly sum each week.

## FACTS SUPPORTING MR. LAFORTUNE'S CLAIM FOR UNPAID OVERTIME WAGES IN VIOLATION OF THE FLSA

53. Mr. LaFortune's typical work schedule was Monday through Friday, from 9:00 a.m. to 7:00 p.m.

54. Mr. LaFortune was scheduled to work more than 40 hours per workweek.

55. However, to complete his work on behalf of Defendants, Mr. LaFortune frequently worked before and after his typical work schedule and on weekends.

56. Defendants did not track Mr. LaFortune's time.

57. Despite not tracking Mr. LaFortune's time, Defendants knew or should have known Mr. LaFortune worked in excess of 40 hours per workweek.

58. For example, Mr. LaFortune would email and/or call his supervisor on weekends.

59. Defendants required Mr. LaFortune to obtain is supervisor's approval to make any changes to the construction process set by Lanier Home.

60. Mr. LaFortune could not schedule subcontractors or halt construction without Lanier Home's approval.

61. Further, Mr. LaFortune could not bind Lanier Home to substantive economic liabilities, without prior authorization from management.

62. Further, Mr. LaFortune regularly spoke with management first thing in the morning and late in the evenings.

63. Defendants directed Mr. LaFortune to work more than 40 hours during most, if not all, workweeks.

64. This, and other practices by Defendants, resulted in Mr. LaFortune working hours in excess of 40 hours per week, for which he was not compensated at one and one-half times her regular rate of pay.

65. Defendants never compensated Mr. LaFortune at one and one-half times his regular rate of pay for hours worked in excess of 40 throughout his entire employment.

66. Defendants knew, or should have known, that Mr. LaFortune worked in excess of 40 hours during certain workweeks, for which he was not properly compensated.

67. Defendants knowingly violated the FLSA's timekeeping provision by failing to track Mr. LaFortune's time.

**FACTUAL ALLEGATIONS SUPPORTING MR. LAFORTUNE'S STATE LAW CLAIMS**

68. During his employment, Defendants accused Mr. LaFortune of stealing money from Lanier Home.

69. Ms. Corely individually accused Mr. LaFortune of theft.

70. Whenever he was confronted with these accusations of theft, Mr. LaFortune denied stealing anything from Ms. Corely and/or Lanier Home.

71. Neither Lanier Home or Ms. Corely ever provided any evidence to Mr. LaFortune as to why he was suspected of stealing.

72. Rather than explaining to Mr. LaFortune why he was suspected of theft, Mr. LaFortune's supervisor threatened Mr. LaFortune over the theft allegations.

73. Mr. LaFortune did not, and has not, committed theft against Lanier Home.

74. Mr. LaFortune did not, and has not, committed theft against Ms. Corely.

75. Lanier Home and Ms. Corely knew, or should have known, that Mr. LaFortune did not commit theft against either Defendant.

76. Despite knowing Mr. LaFortune did not commit theft, Defendants filed a police report with Forsyth County alleging Mr. LaFortune committed theft by conversion.

77. Due to this false police report, Mr. LaFortune was arrested by Forsyth County on or about July 20, 2022.

78. After his arrest, Mr. LaFortune was incarcerated by Forsyth County.

79. Mr. LaFortune was incarcerated for two days, before making bail.

80. Mr. LaFortune was only released from incarceration when he paid the necessary bond amount.

81. The charges against Mr. LaFortune were dismissed on September 2, 2022.

82. Defendants' false statements were the proximate cause of Mr. LaFortune's arrest and incarceration.

83. Defendants filed their false police report knowing that Mr. LaFortune would likely be arrested based upon their untrue statements.

84. Defendants intended for Mr. LaFortune to be arrested when filing their false police reports.

85. Defendants had no grounds for making these false statements to police, other than to their desire to injure Mr. LaFortune.

86. Defendants have continued to make false statements regarding Mr. LaFortune.

87. By way of example, Plaintiff has applied to open positions within a year of filing this Action, for which he was qualified, but was denied the position based upon Defendants' false statements to others about his alleged theft within one year of this Action.

## COUNT 1: FAILURE TO PAY OVERTIME WAGES

88. Plaintiff regularly worked more than 40 hours per week during certain workweeks while employed by Defendants.

89. Defendants failed to compensate Plaintiff for all time worked, including those hours worked in excess of 40 per workweek.

90. Defendants failed to compensate Plaintiff at one and one-half times his regular rate of pay for all time worked over 40 hours during certain workweeks.

91. Defendants suffered or permitted Plaintiff to work hours in excess of 40 during certain workweeks.

92. Defendants knew, or should have known, that Plaintiff worked in excess of 40 hours during certain workweeks.

93. Defendants knew Plaintiff worked more than 40 hours during certain workweeks and chose not to pay Plaintiff one and one-half times his regular rate of pay for time worked over 40 hours per workweek.

94. Defendants violated the FLSA's record-keeping provision by failing to keep accurate time records of Plaintiff's work on behalf of Defendants.

95. Defendants violated the FLSA's overtime provision willfully and with reckless disregard for Plaintiff's rights.

96. Plaintiff seeks his unpaid overtime for all time over 40 hours in certain workweeks, in which Defendants failed to compensate him at 1.5 times his regular rate of pay.

97. Pursuant to U.S.C. § 216(b), Defendants are liable to Plaintiff for all unpaid overtime wages, liquidated damages, and attorneys' fees and costs of litigation.

### COUNT 2: DEFAMATION AND DEFEMATION PER SE

98. As detailed above, Defendants have made false and defamatory statements regarding Mr. LaFortune, including that he committed or conspired to commit various crimes, and that he was dishonest.

99. Defendants' statements are false and defamatory as to Mr. LaFortune, and were made negligently, recklessly, and/or maliciously with the intent to injure Mr. LaFortune.

100. Defendants' statements were published to members of Mr. LaFortune's community, were not privileged, are defamatory, and have exposed Mr. LaFortune to public hatred, contempt, and/or ridicule.

101. Defendants' statements have damaged Mr. LaFortune's reputation in the community.

102. Defendants' statements, which falsely accuse and/or implicate Mr. LaFortune in connection with various criminal conduct, dishonesty, and immorality, are defamatory on their face, and constitute defamation per se.

103. Mr. LaFortune suffered damages as a direct and proximate result of Defendants' defamatory statements in an amount to be determined at trial.

## COUNT 3: FALSE ARREST

104. As a result of Defendants' misconduct, including their misrepresentations to law enforcement, Mr. LaFortune was arrested under process of law for the criminal offense theft by conversion, which is a crime pursuant to O.C.G.A. § 16-8-4.

105. Mr. LaFortune's arrest was instigated by Defendants with malice, without probable cause, and under a valid warrant, accusation, or summons.

106. Under the circumstances, and knowing their accusations were false, Defendants had no grounds for arresting Mr. LaFortune but for their desire to injure the accused.

107. Ms. Corely's actions were taken with willful and wanton misconduct, and not with any privilege bestowed upon her as CEO, CFO, or Secretary of Lanier Home.

108. Thus, Ms. Corely should also be held personally liable for her tortious and wrongful acts.

109. LaFortune has suffered damages as a result of his false arrest in an amount to be determined at trial.

### COUNT 4: MALICIOUS PROSECUTION

110. As a result of Defendants' misconduct, including their misrepresentations to law enforcement, Mr. LaFortune was arrested for the criminal offense of theft by conversion, which is a crime under O.C.G.A. § 16-8-4.

111. Mr. LaFortune's prosecution was instigated by Defendants with malice, without probable cause, and under a valid warrant, accusation, or summons.

112. Under the circumstances and knowing their accusations were false, Defendants had no grounds for prosecuting Mr. LaFortune but for their desire to injure the accused.

113. Mr. LaFortune's prosecution has since been terminated in his favor.

114. Ms. Corely's actions were taken with willful and wanton misconduct and not with any privilege bestowed upon her as CEO, CFO, or Secretary of Lanier Home.

115. Thus, Ms. Corely should also be held personally liable for her tortious and wrongful acts.

116. LaFortune has suffered damages as a result of his false arrest in an amount to be determined at trial.

### COUNT 5: INVASION OF PRIVACY
### FALSE LIGHT

117. Defendants made false statements and published private information concerning Mr. LaFortune with actual malice and with the intent to paint Mr. LaFortune in a false light.

118. Defendants' publications alleged that Mr. LaFortune engaged in criminal conduct and/or moral wrongdoing.

119. Despite their public accusations, Defendants knew that Mr. LaFortune had not committed a crime.

120. Defendants' publications are offensive and objectionable to a reasonable person.

121. Defendants' publications are the direct and proximate cause of harm to Mr. LaFortune.

122. Ms. Corely's actions were not taken in good faith or within the scope of her official actions or duties as an officer and/or director of Lanie Home, but rather constitute willful and wanton misconduct.

123. Thus, Ms. Corely should also be held personally liable for her own tortious and wrongful acts.

124. Mr. LaFortune has been damaged as a result of Defendants' conduct in an amount to be determined at trial.

## COUNT 6: INTENTIONAL/NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

125. Defendants' conduct as described herein was intentional and/or reckless.

126. Defendants' conduct as described herein was extreme and outrageous such that it humiliated, embarrassed, and frightened Mr. LaFortune.

127. Defendants' conduct caused Mr. LaFortune emotional distress.

128. The emotional distress Mr. LaFortune experienced was severe and continues to be severe.

129. Ms. Corely's actions were not taken in good faith or within the scope of her official actions or duties as an officer and/or director of Lanier Home, but rather constitute willful and wanton misconduct.

130. Thus, Ms. Corely should also be held personally liable for her tortious and wrongful conduct.

131. Alternatively, Defendants negligently caused Mr. LaFortune severe emotional distress as a result of their conduct.

132. Defendants' actions were the direct and proximate cause of Mr. LaFortune's severe emotional distress and of Mr. LaFortune's ensuing damages.

133. Mr. LaFortune is entitled to a judgment against Defendants for damages suffered as a result of Defendants' conduct.

### COUNT 7: PUNITIVE DAMAGES

134. By committing the torts described herein, Defendants' actions constitute willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise a presumption of conscious indifference to the consequences.

135. Mr. LaFortune is entitled to an award of punitive damages in an amount sufficient to deter the Defendants' wrongful conduct

### DEMAND FOR JUDGMENT

Plaintiff respectfully requests that the Court:

(a) Declare that Defendants jointly employed Plaintiff;

(b) Declare that Defendants violated the FLSA's overtime provision;

(c) Enter judgment against Defendants that they violated the FLSA's overtime provision and, further, that their overtime violations were willful;

(d) Enter judgment Defendants jointly and severally for defamation, false arrest, false imprisonment, malicious prosecution, invasion of

privacy/false light, and intentional/negligent infliction of emotional distress.

(e) Enter a monetary judgment against Defendants, including:

    i) Overtime wages at one and one-half times Plaintiff's regular rate of pay;

    ii) Liquidated damages in an amount equal to Plaintiff's unpaid overtime wages;

    iii) Compensatory damages in an amount to be proven at trial;

    iv) General damages;

    v) Punitive damages;

    vi) Reasonable costs and attorneys' fees;

    vii) Prejudgment interest;

    viii) Post-judgement interest continuing to accrue; and,

(f) Grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial.

Respectfully submitted: December 6, 2024.

**GUILMETTE PULVER LLC**  
1355 Peachtree Street NE  
Suite 1125  
Atlanta, Georgia 30309

*/s/ William S. Cleveland*  
William S. Cleveland  
Georgia Bar No. 721593  
w.cleveland@guilmettepulver.com

T: (833) 377-3060
*Counsel for Plaintiff*